# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY J. SALKO, M.D., | : | No. 3:12cv515 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| KATHLEEN SEBELIUS, in her | : | |
| official capacity as Secretary of the | : | |
| U.S. Department of Health and | : | |
| Human Services, | : | |
|     Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Defendant Kathleen Sebelius, in her official capacity as Secretary of U.S. Department of Health and Human Services, has excluded Plaintiff Gregory J. Salko, M.D. from participating in Medicare and other federally funded health care programs for a period of five years. Plaintiff now appeals that decision. Before the court for disposition are cross-motions for summary judgment. The parties have briefed their respective positions and the motions are ripe for disposition.

**Background**

The general background facts in the instant case are not in dispute. Plaintiff is a licensed physician residing in Lackawanna County, Pennsylvania. (Doc. 1, Compl. ¶ 3). On June 30, 2009, plaintiff pled guilty to two criminal charges in the United States District Court for the Middle District of Pennsylvania. The charges were: 1) violation of 42 U.S.C. §

1

1320-7b(a)(2)(ii), that while not presenting or causing to be presented any claim for payment by any federal healthcare program for the patient encounter, he knowingly and willfully caused to be made a false representation of a material fact for use in determining rights to such benefits by Medicare; and 2) violation of 42 U.S.C. § 1302d-6(a)(2), knowingly obtaining and causing the unlawful disclosure of protected health information of a patient. (Id. ¶ 5).

Section 1128(a)(1) of the Social Security Act mandates the exclusion of anyone from participating in Medicare or Medicaid if he is convicted of a criminal offense related to the delivery of an item or service under Medicare or Medicaid. 42 U.S.C. § 1320a-7. In pertinent part, section 1128(a)(1) provides:

> **Exclusion of certain individuals and entities from participation in Medicare and State health care programs**
>
> (a) Mandatory exclusion
> The Secretary shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a-7b(f) of this title):
>
> (1) Conviction of program-related crimes
> Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program.

42 U.S.C. § 1320a-7.

The Inspector General of the Health and Human Services Department (hereinafter "the IG") determined that plaintiff had been convicted of a criminal offense relating to the delivery of an item or service

2

under Medicare or Medicaid program. Accordingly, in May 2011, the IG excluded plaintiff from participating in Medicare or other federally funded health care programs for five years. (Administrative Record (hereinafter "R.") at 137-138). Plaintiff appealed this determination to the Department of Health and Human Services Departmental Appeals Board Civil Remedies Division (hereinafter "DAB"). The DAB sustained the IG's decision to exclude plaintiff. (R. at 1-12). Plaintiff appealed the DAB decision to this court by filing a complaint on March 31, 2012. (Doc. 1, Compl.). After a period of discovery, the parties filed cross-motions for summary judgment bringing the case to its present posture.

**Jurisdiction**

We have jurisdiction to review final decisions of the Secretary of the U.S. Department of Health and Human Services. 42 U.S.C. § 1320a-7(f) (incorporating 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides[.]") Such a decision is "final" when it is heard by an administrative law judge and reviewed by the Civil Remedies Division of the Departmental Appeals Board for the Department of Health and Human Services. The DAB's decision is the final decision of the Secretary for purposes of judicial review. 42 U.S.C. §§ 405(g), 1320a-7(f)(1).

**Standard of review**

As noted above, the parties have filed cross-motions for summary judgment. Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions,

admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Plaintiff appeals his exclusion from Medicare and other federally funded health care programs. We review the defendant's decision as follows: We must determine whether defendant's findings of fact are supported by substantial evidence. 42 U.S.C. § 405. The "substantial evidence" standard is deferential. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

With regard to legal questions and interpretations of law, we are not bound by the defendant's conclusions. Rather, we must determine if the defendant applied the correct legal standard. In other words, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck

v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

The plaintiff raises four issues in his appeal. They are as follows: 1) He was not convicted of a crime "related to" the delivery of an item or service under Medicare or Medicaid; therefore, he is not subject to mandatory exclusion; 2) the defendant's decision to exclude him is inconsistent with her prior determination that he was an eligible provider in the Medicare Program after his conviction; 3) He was not provided "fair notice" of the defendant's position because it was adopted for the first time in this enforcement proceeding; and 4) the decision must be set aside as arbitrary and capricious. We will address these issues separately.

**1) Crimes "related to" the delivery of an item or service under Medicare or Medicaid**

The defendant has excluded plaintiff from participation in Medicare under 42 U.S.C. § 1320a-7(a)(1). This section mandates the exclusion of an individual who has been convicted of a criminal offense "**related to**" the delivery of an item or service under Medicare. Plaintiff does not contest that he was convicted of a criminal offense. Rather, he argues that his criminal act was not "related to" delivery of an item or service under Medicare.[1]

---

[1] Our standard of review is to determine if the Secretary's final decision is based on substantial evidence. The Secretary found that plaintiff essentially admitted that the offense was "**related to**" the delivery of an item or service, as required for a mandatory exclusion. (R. at 7). In its brief to the DAB the IG stated that petitioner did not appeal the ALJ's finding that the conviction was related to the delivery of an item or service under Medicare. (R. at 7 n.3). Plaintiff did not dispute this characterization of his position and did not request the opportunity to submit a brief to

Plaintiff was convicted under 42 U.S.C. § 1320a-7b(a)(2), which makes it a crime to "knowingly and willfully make[] or cause[] to be made any false statement or representation of a material fact for use in determining rights" benefit or payment under a federal health care program. Two subsections follow in the statute relating to the classification of the crime as either a felony or a misdemeanor. It is a felony under subsection (i) where the "statement, representation, concealment, failure, or conversion" is "in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program." It is a misdemeanor under subsection (ii) where the statement or representation is made "by any other person."

The parties agree that plaintiff falls under subsection (ii), the misdemeanor section. Plaintiff argues that his statement was not made by a person in connection with the furnishing of items or services for which payment is or may be made under Medicare. Accordingly, since it was not made by a person "in connection" with the furnishing of items or services, it is therefore not "related to" the delivery of an item or service under Medicare. As it is not so related, then the mandatory exclusion does not apply. After a careful review, we disagree with the plaintiff.

Our review of an agency's construction of a statute that it administers is governed by the standards set forth in Chevron, USA, Inc. v. Am. Iron &

---

dispute it. (Id.) The Secretary thus decided this issue on the facts of the underlying conviction and because the plaintiff failed to dispute the IG's position. A determination based on undisputed facts and undisputed argument is based on substantial evidence. We could end our analysis of this issue here, but for purposes of completeness we address the issues that plaintiff now raises that he did not raise before the DAB.

Steel Inst., et al., 467 U.S. 837 (1984). A two-step review procedure is used in such situations. First, where the intent of Congress is clear from the statute, we must ensure that the agency gave "effect to the unambiguously expressed intent of Congress." Id. at 842-43. Where "however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute . . . . Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. In other words, in such instances the court must determine whether the agency's view is reasonable. Id. at 845.

Under this analysis, we first apply step one and "examine the statutory language to determine whether Congress has directly spoken to the issue; if it has, we do not even proceed to step two." Elizabeth Blackwell Health Ctr. for Women v. Knoll, 61 F.3d 170, 186 (3d Cir. 1995). Under the second step, where the statute is silent or ambiguous, we provide strong deference to the agency and determine whether the agency's interpretation is reasonable, "not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218 (2009). The general rule of deference is inapplicable in some cases. For example, deference is not provided where the agency's interpretation of the statute is "plainly erroneous or inconsistent with the regulation." Chirstopher v. Smithkline Beecham Corp., - - U.S. - - ; 132 S.Ct. 2156, 2166 (2012) (quoting Chase Bank USA, N.A. v. McCoy, 562 U.S. - - , 131 S.Ct. 871, 880 (2011)). Additionally, we do not provide deference where the

agency's interpretation of the statute

> does not reflect the agency's fair and considered judgment on the matter in question. This might occur when the agency's interpretation conflicts with a prior interpretation or when it appears that the interpretation is nothing more than a convenient litigating position, or a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack.

Id. (internal citations, quotation marks and editing marks omitted).

Generally, the intent of the statute is clear and unambiguous. The secretary's interpretation of the statute is not plainly erroneous or inconsistent with the regulation. Congress seeks to prevent those making false statements related to Medicare payments in federal health care programs. The issue plaintiff presents is whether his criminal offense is "related to" the delivery of a Medicare service. The term "related to" is not defined in the statute. When a term is not defined in a statute, we must examine its ordinary meaning. Mohamad v. Palestinian Auth., - - U.S. - - , 132 S.Ct. 1702, 1706-07 (2012). "The term 'relate' means 'to show or establish a logical or causal connection between.'" Bobb v. Atty. Gen. of U.S., 458 F.3d 213, 219 (3d Cir. 2006) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 1916 (1991)). The term "relate to" is generally broad and expansive. McGurl v. Trucking Emps. of N.J. Welfare Fund, Inc., 124 F.3d 471, 481 (3d Cir. 1997) (explaining the broad scope of ERISA based on in part on the use of the term "relate to"). As explained by the Supreme Court, "relating to" has an ordinary meaning which "is a broad - one 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th Ed. 1979)). The Supreme Court has

9

further explained that "[t]he phrase 'relate to' [has a] broad common-sense meaning" thus a statutory provision using that phrase has "broad scope." Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985).

To analyze the issue of whether plaintiff's offense is related to the delivery of an item or service under Medicare, it is necessary to examine his conviction. He was convicted of making a "false statement." The false statement was described at his guilty plea hearing by the Assistant United States Attorney as follows:

> Dr. Salko was practicing medicine in Carbondale, Pennsylvania. And one of his Medicare patients was a woman by the name of Patient X. At least that's the name that we've used to identify this individual in both the indictment and this information. Patient X was a resident of an assisted living facility, Highland Manor. And in May of 2005 she decided to replace Dr. Salko with another doctor. That change took place.
>
> However, in July of 2005 Dr. Salko prepared another progress note for Patient X. A progress note which is marked as Government's Exhibit No. 10. That progress note represented that Mr. Salko -- that Dr. Salko had physically examined Patient X's upper and lower limbs. And these allegations are spelled out specifically in our information.
>
> The government's proof would be that that progress note is false. That after it was prepared Dr. Salko signed it with knowledge of its falsity. And that the examination as specified did not in fact take place. We note, however, as does the information, that this particular medical service that Dr. Salko represented to have provided Patient X was never submitted to Medicare for payment. There was no claim made for this particular service.

R. at 171-72.

Thus, plaintiff pled guilty to drafting a false progress note. [2]   The ALJ correctly focused on the crime plaintiff committed.  It contained two elements: (1) making a false statement and (2) making that statement for use in determining rights to a benefit or payment under Medicare.   The ALJ reasoned that "Petitioner would not have committed the crime for which he was charged and pled guilty to had he not provided care to a Medicare beneficiary and then made a material misrepresentation of fact about that care for use in determining rights to a Medicare benefit or payment."  (R. at 2-3).  A statement made for use in determining rights to Medicare benefits or payment is necessarily related to the delivery of a Medicare benefit.  Thus, plaintiff falls under the mandatory exclusion.  The DAB similarly concluded that plaintiff's crime was related to the delivery of a service.  They found as follows: "[Plaintiff], through his guilty plea, admitted that he made his misrepresentation for the purpose of determining rights to a benefit or a payment under the Medicare program, and the care that [plaintiff] alleged that he provided to a Medicare beneficiary was the essence of [plaintiff's] crime." (R. at 7) (internal quotation marks & citation omitted).   We find that this is a reasonable analysis of the issue.

Plaintiff argues that Congress has determined which convictions are related to the delivery of an item or service under Medicare or Medicaid

---

[2] In an opinion regarding plaintiff's motion to dismiss the underlying criminal charges, the court explained that such statements are made not to submit a claim, but to place in the patient's folder to support a claim that has been submitted should Medicare audit a provider's billings.  United States v. Salko, No. 1:07cr286, 2008 WL 4671769 at *2 (M.D. Pa. Oct. 20, 2008).

11

and which are not so related. If a person is convicted of a felony under the statute, then the conviction is related to the delivery of an item or service. If he is convicted of a misdemeanor, then the conviction is not related to the delivery of an item or service. Plaintiff pled guilty to a misdemeanor, therefore, his conviction is not related to the delivery of an item or service. Because it is not related to the delivery or an item or service, then the mandatory exclusion is inapplicable. We are unconvinced by plaintiff's argument.

The crime to which plaintiff pled guilty is a felony "(i) in the case of such a statement, representation, concealment, failure or conversion by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program[.]" The crime is a misdemeanor "(ii) in the case of such a statement, representation, concealment, failure, conversion, or provision of counsel or assistance by any other person[.]"

In light of section (ii), plaintiff interprets section (i) to mean that it is a felony where the statement is made NOT in connection with the furnishing (by that person) of items or services for which payment is, may or may be made under the program. This interpretation of the statute is inaccurate. The main body of the statute indicates that the false statement must be made for use in determining rights to a benefit or payment under a federal health care program to be a crime. After listing the six instances of false statements that are crimes, the statute provides the grading, that is whether the crime will be a misdemeanor or a felony. As written, to be guilty under subsection 2, the statement must be made for use in determining rights to a benefit or payment under a federal health care

program. As plaintiff interprets the grading section, however, it is a misdemeanor if it is not related to delivery.

All infractions, however, whether misdemeanors or felonies, involve false statements made for use in determining rights to a benefit or payment. In fact, plaintiff admitted at his guilty plea that he made a false statement or representation of a material fact and that is was for use in determining rights to any benefit or payment under a federal healthcare program. (R. at 171). It is self-evident that statements made "for use in determining rights" to benefits under a federal health care program are related to furnishing of such benefits. Accordingly, the mandatory exclusion applies and we find no merit to the plaintiff's arguments to the contrary. Plaintiff makes no convincing argument to that Congress intended only felonies to be "related to" and misdemeanors were as a matter of law "not related to the delivery of an item."

Thus, Plaintiff's claim fails under step one of the Chevron analysis. The defendant has applied an unambiguous statute. Her application is not plainly erroneous or inconsistent with the regulation. See Chirstopher v. Smithkline Beecham Corp., - - U.S. - - ; 132 S.Ct. 2156, 2166 (2012) (quoting Chase Bank USA, N.A. v. McCoy, 562 U.S. - - , 131 S.Ct. 871, 880 (2011)). Therefore, plaintiff is not entitled to relief. If, however, we were to proceed to step-two of the Chevron analysis, we would nonetheless rule in defendant's favor as the defendant's application of the statute is reasonable.

**2) Alleged inconsistency between the exclusion at issue and the prior determination that plaintiff was an eligible provider in the Medicare Program**

The Center for Medicare and Medicaid Services ("CMS") revoked plaintiff's Medicare billing privileges effective September 7, 2007 and imposed a three-year re-enrollment bar. (R. at 121, CMS Correspondence dated Mar. 2, 2010). Later the re-enrollment bar was shortened to one year. (Id.) The CMS informed plaintiff on March 2, 2010, that the bar was lifted and that he was eligible to apply for re-enrollment in the Medicare program. (Id.) Plaintiff thus filed a Medicare reactivation application with CMS, and the application was approved on March 11, 2010. (Id. at 135, CMS Correspondence dated Mar. 11, 2010). Plaintiff could thus begin billing the Medicare program again. A year later, in May 2011, the IG made the determination that plaintiff should be excluded from the Medicare program for five years. (R. at 137-38). Plaintiff contends that the decision of CMS is inconsistent with the decision of the IG, therefore, the IG's decision should not stand. We disagree as the CMS and the IG addressed two different issues.

The CMS revoked plaintiff's billing privileges because his medical license was suspended, and plaintiff failed to report the suspension to the CMS. (R. at 121). That is a different issue from that addressed by the IG. The IG reviewed whether plaintiff should be excluded from Medicare participation due to his criminal conviction. These two issues are completely separate and are not interdependent. Thus, we find this is not a proper basis for appeal.

### 3) Fair notice

Plaintiff next argues that defendant failed to provide him "fair notice" of her position because the position was adopted for the first time in this enforcement proceeding. Plaintiff's argument is not cogent.

The defendant has in fact excluded other medical providers from participation in federal health programs under the mandatory exclusion section for a misdemeanor violation of false statements. See, e.g., James Benham v. Inspector Gen, DAB 2042 (2006); and Scott D. Augsutine v. Inspector Gen., DAB 2043 (2006). Moreover, the defendant's application of the statute merely utilizes the plain language of the statute to exclude the plaintiff. A reading of the statute at the time plaintiff made the false statement for use in determining rights to such a benefit or payment, would have provided him notice that he was subject to the mandatory exclusion. No issues of "fair notice" are apparent and we reject plaintiff's argument to the contrary.

### 4) Arbitrary and capricious

The final argument plaintiff raises is that the defendant's decision is arbitrary and capricious in substance. In support of this position he cites to a case from the United States Court of Appeals for the District of Columbia Circuit, Friedman v. Sebelius, 686 F.3d 813 (D.C. Cir. 2012). In Friedman, a company was convicted of fraudulently misbranding a schedule II controlled substance. Id. at 816. The executives of the company were convicted of a misdemeanor of misbranding a drug. Id. The Secretary of Health and Human Services excluded the executives of the company from participating in federal health care programs for twelve years. Id. The exclusion was not mandatory but permissive under 42 U.S.C. § 1320a-7(b). Id.

15

The executives appealed the decision. Under the statute, the Secretary had authority to exclude them if they were convicted of a misdemeanor relating to fraud. Id. at 818. The executives argued that misdemeanor misbranding is not a misdemeanor relating to fraud and that the Secretary's decision was arbitrary and capricious. Id. First, the court determined that the statute was not ambiguous and, that it authorized the secretary to exclude individuals who were convicted for conduct factually related to fraud. Id. at 820. The court explained that the purpose of the statute was to "protect Federal health care programs from financial harm wrought by untrustworthy providers[.]" Id. It also applied a broad definition to "related to fraud." Id. The court held that the statute at issue authorized "the Secretary to exclude from participation in the Federal health care program an individual convicted of a misdemeanor if the conduct underlying that conviction is factually related to fraud." Id. at 824. The excluded company employees did not dispute that they were excludable under that approach. They did, however, dispute the length of their exclusion. They complained that the Secretary did not justify the length of the exclusion in light of the agency's prior decisions as the Administrative Procedures Act ("APA") requires. Id. at 826.

The Friedman case is distinguishable from the case before the court. In this case, a mandatory exclusion is at issue, not a discretionary exclusion. Additionally, the crime that the executives were convicted of in Friedman was a strict liability crime. Id. at 818. Here, the crime has specific elements to which the plaintiff pled guilty and admitted doing. Thus, we find plaintiff's reliance on Friedman to be unconvincing.

**Conclusion**

For the reasons set forth above, we find no merit to plaintiff's appeal

of the DAB's decision.  The defendant's decision is based on substantial evidence and her legal analysis is appropriate.  Under the <u>Chevron</u> test, we find that the statute is unambiguous and defendant applied it correctly.  Even if the statute could be read as ambiguous, we would find the defendant's action to be reasonable.  We will thus grant summary judgment to the defendant and deny it to the plaintiff.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY J. SALKO, M.D., | : | No. 3:12cv515 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| KATHLEEN SEBELIUS, in her | : | |
| official capacity as Secretary of the | : | |
| U.S. Department of Health and | : | |
| Human Services, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 19th day of February 2013, Defendant Kathleen Sebelius, in her official capacity as Secretary of the U.S. Department of Health and Human Services' motion for summary judgment (Doc. 17) is **GRANTED** and Plaintiff Gregory J. Salko, M.D.'s motion for summary judgment (Doc. 14) is **DENIED**. The Clerk of Court is directed to enter judgment in favor of the defendant and against the plaintiff. The Clerk of Court is further directed to close this case.

                                          **BY THE COURT:**

                                          <u>s/ James M. Munley</u>
                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**